UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

TERRANCE WITHERSPOON,

                                   Plaintiff,

         v.                                                                          9:24-CV-0296
                                                                                     (MAD/DJS)

JOSEPH COREY, et al.,

                                   Defendants.

_____

APPEARANCES:

TERRANCE WITHERSPOON
Plaintiff, pro se
Oneida County Correctional Facility
6075 Judd Road
Oriskany, NY 13424


MAE A. D'AGOSTINO
United States District Judge

                        **DECISION and ORDER**

I.       **INTRODUCTION**

         The Clerk has sent to the Court for review a complaint submitted by pro se plaintiff

Terrance Witherspoon asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"),

together with an application to proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt.

1

No. 9 ("Second IFP Application").[1]  Plaintiff, who is incarcerated at Oneida County

Correctional Facility, has not paid the filing fee for this action.

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2]  "Although an indigent,

incarcerated individual need not prepay the filing fee at the time of filing, he must

subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from

his inmate accounts."  *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d

18, 21 (2d Cir. 2010)).

---

[1]  By Order entered on March 4, 2024, this action was administratively closed based on plaintiff's failure to comply with the filing fee requirement, and plaintiff was afforded thirty (30) days to either (1) pay the $405.00 filing fee in full, or (2) submit a completed and signed in forma pauperis ("IFP") application and signed inmate authorization form.  Dkt. No. 2 ("Administrative Closure Order").  On March 26, 2024, plaintiff's deadline to comply with the Administrative Closure Order was reset to April 30, 2024.  *See* Dkt. No. 4.  More than one year later, the Court received the following from plaintiff: (1) a notice of change of address, Dkt. No. 5; (2) an unsigned IFP application, Dkt. No. 6 ("First IFP Application"); and (3) an inmate authorization form, Dkt. No. 7 ("Authorization Form").  By Decision and Order entered on May 27, 2025, the Court denied the First IFP Application as incomplete and afforded plaintiff a final opportunity to comply with the Administrative Closure Order by paying the filing fee or submitting a properly completed IFP application. Dkt. No. 8.  Thereafter, plaintiff timely filed the Second IFP Application.

[2]  Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  28 U.S.C. § 1915(g).  Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

Upon review, the Court finds that plaintiff has submitted a completed and signed IFP Application (Dkt. No. 9) which demonstrates economic need.  *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District.  Dkt. No. 7. Accordingly, plaintiff's Second IFP Application is granted.

## III.  SUFFICIENCY OF THE COMPLAINT

### A.  Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[3]  Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis.  *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

---

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the

4

allegations contained in a complaint is inapplicable to legal conclusions." *Id*.  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting

Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil Procedure "demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678

(citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that only "tenders naked assertions

devoid of further factual enhancement" will not suffice.  *Id*. (internal quotation marks and

alterations omitted).

### B.    Summary of the Complaint

The complaint asserts allegations of wrongdoing that occurred while plaintiff was

incarcerated at Auburn Correctional Facility.  *See generally* Compl.  The following facts are

set forth as alleged by plaintiff in his complaint.

On August 18, 2021, at approximately 4:00 p.m., plaintiff encountered defendant

Corrections Officer Jones in his cell block area.  Compl. at 4.  At the time, the facility was

"under 'High Security Lockdown Alert' status[.]"  *Id*.  Plaintiff asked defendant Jones whether

the inmates in his block "were going to be allowed recreation in order to use the phone."  *Id*.

5

In response to plaintiff's question, defendant Jones called him a racial slur and walked away. *Id*.

Shortly thereafter, plaintiff stopped defendant Corrections Sergeant Jane Doe and "conveyed to her" his exchange with defendant Jones.  Compl. at 5.  Defendant Jane Doe asked plaintiff whether he would be "going to chow[,]" to which plaintiff responded, "Yes." Defendant Jane Doe then stated, "Okay, I'm running chow, and you'll be safe when I'm there."  *Id*.

Roughly four hours later, plaintiff exited his assigned cell and "lined up in front of [it] as directed, . . . wait[ing] until [he] was instructed to exit the company for chow."  Compl. at 5. When plaintiff "got to the front of the company, [defendant] Jones . . . appeared out of nowhere and ordered [plaintiff] to put [his] hands on the wall."  *Id*.  Plaintiff "complied with [the] direct order."  *Id*.  "Once [plaintiff] was facing the wall, with [his] palms high and flat[,]" defendant Jones "pulled out his handcuffs and put them on [plaintiff]."  *Id*.

After the last inmate exited the company, defendant Jane Doe told defendant Jones "to handle [his] business."  Compl. at 5.  Defendant Jane Doe then "gave the green light" to defendant Jones and the seven other corrections officers in the area – defendants Sneilhammer, Vasile, and John Doe #1-5 – for these officials "to handle their business[.]"  *Id*. at 3, 5.  The eight corrections officials "then proceeded to punch[ ] [plaintiff] in the face

multiple times" as his hands remained cuffed behind his back.  *Id*. at 5.  Plaintiff fell to the

ground, at which point the officials kicked various parts of his body.  *Id*.

Eventually, the officials stopped assaulting plaintiff and "tried to walk [him] down some

stairs heading in the direction of [the] Special Housing Unit[.]"  Compl. at 6.  "While going

down the stairs, [defendant] John Doe #5 punched [plaintiff] in the side of [his] face and [the]

back of the head."  *Id*.  Plaintiff was then pushed from behind, causing him to fall down the

stairs "face first into the walls and floor."  *Id*.  Plaintiff attempted to walk but was unable to

move because of the pain.  *Id*.  As a result, the escorting officers "dragg[ed] [plaintiff] down

the hallway to the elevators as if [he] was a dead carcass."  *Id*.

Once in the special housing unit ("SHU"), defendant Corrections Sergeant John Doe

"cut [plaintiff's] clothes off . . . because [he] could not lift [his] hand over [his] head[.]"  Compl.

at 3, 6.  After plaintiff's clothes were removed, some of the corrections officers involved in the

use-of-force incident "held [plaintiff] up in a standing position," causing him more pain, so that

they could "tak[e] several photographs of [his] body."  *Id*. at 6.

Thereafter, while plaintiff was clothed and seated in the frisk area, defendant

Corrections Sergeant John Doe "reappeared and approached [plaintiff] with orders [that he]

take off all [his] clothes again."  Compl. at 7.

In addition to the aforementioned officials, the complaint also names the following

individuals as defendants: (1) Auburn Correctional Facility Superintendent Corey; (2) Deputy

7

Superintendent John Doe; (3) Corrections Captain John Doe; and (4) Corrections Lieutenant John Doe.

Liberally construed, the complaint asserts the following Section 1983 claims against the named defendants: (1) Eighth Amendment excessive force and failure-to-intervene claims against defendants Corrections Sergeant Jane Doe, Corrections Sergeant John Doe, and Corrections Officers Jones, Sneilhammer, Vasile, and John Doe #1-5; (2) a Fourteenth Amendment equal protection claim against defendant Jones; (3) supervisory liability claims against defendants Corey, Deputy Superintendent John Doe, Corrections Captain John Doe, and Corrections Lieutenant John Doe; and (4) state law claims for assault, battery, intentional infliction of emotional distress, and negligence.

Plaintiff seeks money damages.  Compl. at 14-16.  For a more complete statement of plaintiff's claims, reference is made to the complaint.

**C.     Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the

8

vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Instead, "a plaintiff must plead and prove that each Government-official defendant, through

9

the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)).

Here, plaintiff names Superintendent Corey, Deputy Superintendent John Doe, Corrections Captain John Doe, and Corrections Lieutenant John Doe as defendants without any allegations of wrongdoing by any of these individuals in the body of the complaint. Indeed, it is entirely unclear how and when, if at all, any of these officials may have violated plaintiff's federal rights. *See generally*, Compl.

Accordingly, plaintiff's Section 1983 claims against defendants Corey, Deputy Superintendent John Doe, Corrections Captain John Doe, and Corrections Lieutenant John Doe are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2. Eighth Amendment Excessive Force and Failure-to-Intervene Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and

10

wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

"The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Law enforcement officials, including prison officials, can be held liable under Section 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (prison official's Eighth Amendment duty to take reasonable measures to guarantee the safety of inmates in their custody includes a duty to protect inmates from harm threatened by other officers).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment excessive

force and failure-to-intervene claims against defendants Corrections Sergeant Jane Doe, Corrections Sergeant John Doe, and Corrections Officers Jones, Sneilhammer, Vasile, and John Doe #1-5 survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause requires that the government treat all similarly situated people alike.  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).  In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment.

12

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

"Courts in this circuit and elsewhere have held that officers' use of racial epithets may be regarded as direct evidence of racial animus and, when combined with physical abuse or other unlawful actions, may establish an equal protection violation." *Ali v. Connick*, 136 F. Supp. 3d 270, 280 (E.D.N.Y. 2015); *see also Cole v. Fischer*, 379 Fed. App'x 40, 43 (2d Cir. 2010) ("When the verbal harassment and simultaneous physical abuse alleged in the amended complaint are considered together, we have little trouble concluding that plaintiff's allegations were sufficient to state a § 1983 claim for discrimination on the basis of race and religion.").

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's Fourteenth Amendment equal protection claim against defendant Jones survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### 4.  State Law Claims

#### a.  Assault, Battery, and IIED Claims

In New York, assault, battery, and intentional infliction of emotional distress claims are governed by a one-year statute of limitations. *See* N.Y. C.P.L.R. 215(3) (McKinney 2018);

*see also Johnson v. Schiff*, No. 9:11-CV-0531 (MAD/TWD), 2013 WL 5466218, at *5

(N.D.N.Y. Sept. 13, 2013) (noting that "state law claims for assault and battery . . . are

governed by a one-year statute of limitations"), *report and recommendation adopted by* 2013

WL 5466638 (N.D.N.Y. Sept. 30, 2013); *Brewton v. City of New York*, 550 F. Supp. 2d 355,

370 n.13 (E.D.N.Y. 2008); *Solomon v. Siemens Indus., Inc.*, No. 11-CV-1321, 2014 WL

1271192, at *19 (E.D.N.Y. Mar. 26, 2014) ("[T]he limitations period applicable to claims for

intentional infliction of emotional distress is one year.") (citation omitted); *Doumin v. Carey*,

No. 6:06-CV-1119 (NPM/DEP), 2008 WL 4241075, at *3 (N.D.N.Y. Sept. 12, 2008) (same).

 Here, the complaint was filed, at the earliest, on February 27, 2024.  Dkt. No. 1-1; Dkt.

No. 1-2.[4]  The alleged assault occurred on or about August 18, 2021.  Compl. at 4.

 Accordingly, plaintiff's state law assault, battery, and intentional infliction of emotional

distress claims are untimely filed and therefore dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief

may be granted.

---

[4]  Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner-plaintiff delivered
his complaint to a prison guard for mailing to the court which, absent other evidence, is presumed to be the date
that the complaint was signed.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Noble v. Kelly*, 246 F.3d 93, 97
(2d Cir. 2001).  In this case, the complaint is not dated.  However, the mailing envelope in which the complaint
was sent, along with plaintiff's enclosure letter, are both dated February 27, 2024.  *See* Dkt. No. 1-1; Dkt. No. 1-
2.

### b.  Negligence Claim

New York Correction Law § 24 provides a jurisdictional limitation regarding state law claims asserted against any officer or employee of DOCCS, and thus, "the Court is obligated to address the issue on initial review." *See Flynn v. Ward*, No. 9:15-CV-1028 (GLS/CFH), 2015 WL 8056060, at *6 (N.D.N.Y. Dec. 4, 2015).  "Claims for damages arising out of a DOCCS employee's act performed within the scope of his employment may be maintained in the New York Court of Claims as a claim against the State of New York." *Heyliger v. Gebler*, 496 F. Supp. 2d 250, 252 (W.D.N.Y. 2007).  Courts look at the following factors to determine whether a defendant's action is within the scope of employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in the actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could have reasonably anticipated.

*Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (quotations and citations omitted).

The test to determine whether the defendants' actions fall within the scope of their employment is "whether the act was done while the servant was doing his master's work no matter how irregularly, or with what disregard of the instructions." *Cruz v. New York*, 24 F. Supp. 3d 299, 309 (W.D.N.Y. 2014) (citing *Cepeda v. Coughlin*, 128 A.D.2d 995, 996 (3d Dep't 1987)).  "In certain circumstances, conduct that is 'prompted by purely personal reasons unrelated to the employers' interest,' or 'an intentional course of conduct contrary to

15

institutional rules, training and common sense,' may be found outside the scope of employment." *Flynn*, 2015 WL 8056060, at *6 (quoting *Johnson v. N.Y. State Dep't of Corr. Servs. and Cmty. Supervision*, No. 11-CV-0079, 2013 W L 5347468, at *3 (W.D.N.Y. Sept. 23, 2013)).

Here, the complaint alleges that plaintiff was assaulted by multiple corrections officials after other inmates in his cell block left the area for dinner, and then again while being transported to the special housing unit. *See* Compl. at 5-7.

Although the alleged use of force is not conduct that falls within the normal course of a correction's officer's duties, "various courts have held that a correctional officer who uses force while on duty is acting within the scope of employment, and therefore is entitled to the protections of section 24." *Deal v. Yurack*, No. 9:04-CV-0072 (LEF/DEP), 2007 WL 2789615, at *10 (N.D.N.Y. Sept. 24, 2007) (collecting cases); *see also Ames v. New York Dep't of Corr. & Cmty. Supervision*, No. 9:12-CV-01487 (MAD/RFT), 2015 WL 4126326, at *14 (Mar. 24, 2015) ("The alleged ... excessive use of force during the movement of Plaintiff within the facility [was] not departure[ ] great enough to remove Defendant Correction Officers' actions from within the scope of their employment.").

Furthermore, unlike a claim for assault, a claim for negligence does not require plaintiff to prove any sort of intentional or reckless act. Thus, allowing plaintiff to proceed with a negligence claim under a theory that the alleged wrongdoers were acting outside the scope

16

of their employment effectively allows plaintiff to avoid the jurisdictional bar of Correction Law

§ 24 that clearly applies to negligence claims, while at the same time benefitting from a lesser

burden of proof with respect to the underlying claim (as compared to a claim for excessive

force, which requires proof of at least recklessness).  As recognized by other courts within the

Second Circuit, this is not an appropriate result.  *See, e.g.*, *Vilkhu v. City of New York*, No.

06-CV-2095, 2008 WL 1991099, at *9 (E.D.N.Y. May 5, 2008) ("[O]nce intentional offensive

contact has been established, the actor is liable for assault and not negligence, even when

the physical injuries may have been inflicted inadvertently. . . . When a plaintiff brings

excessive force and assault claims which are premised upon a defendant's allegedly

intentional conduct, a negligence claim with respect to the same conduct will not lie." (internal

quotation marks and citations omitted)); *see also Naccarato v. Scarselli*, 124 F. Supp. 2d 36,

45 (N.D.N.Y. 2000) (dismissing negligent infliction of emotional distress claim based on the

same allegations as those giving rise to excessive force and assault claims); *Russo v. County

of Warren*, No. 1:12-CV-1616 (FJS/CFH), 2015 WL 7738043, at *10 (N.D.N.Y. Dec. 1, 2015)

(dismissing negligence claim based on the same allegations as those giving rise to excessive

force and assault claims), *adhered to on reconsideration by* 2016 WL 843373 (N.D.N.Y. Mar.

1, 2016); *Clayton v. City of Poughkeepsie*, No. 06-CV-4881, 2007 WL 2154196, at *6

(S.D.N.Y. June 21, 2007) ("Because Plaintiff here has asserted claims of excessive force and

assault and battery and pled sufficient facts to support those claims, he cannot additionally

17

argue that the same facts would give rise to a claim for either negligence or gross negligence.").

Accordingly, the Court finds that plaintiff's negligence claim is jurisdictionally barred under Correction Law § 24.  The Court would add only that even assuming that New York Correction Law § 24 does not present a jurisdictional bar to plaintiff's negligence claim, the federal statute governing the exercise of supplemental jurisdiction over state law claims allows this Court to decline to exercise supplemental jurisdiction over such claims for any of the following reasons: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

In this case, the Court has little trouble concluding that the issue of whether plaintiff may avoid the jurisdictional bar of Correction Law § 24 and litigate a negligence claim based on alleged incidents of excessive force raises novel issues of state law.  Thus, even if Correction Law § 24 does not bar the Court from considering plaintiff's negligence claim, the Court alternatively declines to exercise supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367(c).

IV.    **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Second IFP Application (Dkt. No. 9) is **GRANTED**.[5]  The Clerk shall provide the superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form (Dkt. No. 7), and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk shall provide a copy of plaintiff's authorization form (Dkt. No. 7) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following Section 1983 claims **SURVIVE** sua sponte review and require a response: (1) plaintiff's Eighth Amendment excessive force and failure-to-intervene claims against defendants Corrections Sergeant Jane Doe, Corrections Sergeant John Doe, and Corrections Officers Jones, Sneilhammer, Vasile, and John Doe #1-5; and (2) plaintiff's Fourteenth Amendment equal protection claim against defendant Jones; and it is further

**ORDERED** that plaintiff's remaining Section 1983 claims and state law intentional tort claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28

---

[5] Plaintiff should note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;[6] and it is further

      **ORDERED** that the Court declines to exercise supplemental jurisdiction over plaintiff's state law negligence claim, which is **DISMISSED without prejudice** pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1367(c); and it is further

      **ORDERED** that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with three copies of the complaint, to the United States Marshal for service upon defendants Jones, Sneilhammer, and Vasile.[7] The Clerk shall forward a copy of the summons and complaint by electronic mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

      **ORDERED** that upon the completion of service, a response to the complaint be filed by defendants Jones, Sneilhammer, and Vasile, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

---

[6] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

[7] The Clerk will not issue a summons for any of the remaining "Doe" officials because service cannot be effectuated on unidentified individuals.

**ORDERED** that plaintiff must take reasonable steps to ascertain the identity of the remaining "Doe" officials through discovery, and when identified, seek to amend the complaint to add these individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a). Plaintiff's failure to timely identify and serve these defendants will result in their termination from the action and dismissal of the claims asserted against them pursuant to Rules 4(m) and 41(b) of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Clerk shall **TERMINATE** all defendants other than Corrections Sergeant Jane Doe, Corrections Sergeant John Doe, and Corrections Officers Jones, Sneilhammer, Vasile, and John Doe #1-5; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

21

ORDERED that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated:  July 3, 2025
        Albany, NY

Mae A. D'Agostino
U.S. District Judge

22